UNITED STATES DISTRICT COURT
FOR THE
NORTHERN DISTRICT OF INDIANA

| | |
|---|---|
| A.S. and S.S., Individually and as Parents and Next Friends of A.R.S., A Minor, <br><br> Plaintiffs, <br><br> v. <br><br> Lake Central School Corporation, St. John, Indiana, The Indiana Department of Education, Division of Special Education, Dr. Katie Jenner, Indiana Secretary of Education. <br><br> Defendants. | Case No. 4:23-cv-00079 |

**CIVIL COMPLAINT FOR INJUNCTIVE RELIEF**

A.S. and S.S. (Parents) respectfully ask this Court: (1) to confirm their right to represent A.R.S., their child, in an action under the Individuals with Disabilities Education Act (IDEA), (2) to reverse the plainly wrong decision of the Indiana state Independent Hearing Officer (IHO) dismissing their case for lack of standing, (3) to enjoin the Indiana Department of Education, Division of Special Education (DOE) to comply immediately with the IDEA's mandate to hold a timely Due Process hearing on the merits for Plaintiffs, and (4) remand this case to the DOE to appoint a different IHO to preside over Plaintiffs' Due Process hearing.

Federal district court reviews of IDEA actions have never fallen squarely under a single federal rule or traditional legal form. This one fits even less neatly. But regardless of the applicable rule or form, the interests of justice require a swift decision and swift relief.

## I. PARTIES

1. A.S. and R.S. (Parents) are the adoptive parents of A.R.S., a minor, and bring this action in their individual capacity and as parents and next friends of A.R.S.

2. At all relevant times, Plaintiffs have lived within the bounds of Lake Central School Corporation, St. John, Indiana (LCSC).

3. A.R.S. is a 13-year-old "child with a disability" as defined by the IDEA. 20 U.S.C. § 1400(3)(A); 34 C.F.R. § 300.8.

4. Parents and A.R.S. together are referred to in the Complaint as "Plaintiffs."

5. A.R.S. suffers from Post-Traumatic Stress Disorder (PTSD), Disruptive Mood Dysregulation Disorder (DMDD), Reactive Attachment Disorder (RAD), Depersonalization-Derealization Disorder (DDD), Generalized Anxiety Disorder, and Attention Deficit Hyperactivity Disorder (ADHD).

6. At all relevant times A.R.S. has been eligible to receive special education and related services from Defendant LCSC.

7. LCSC is an Indiana public school corporation that maintains its principal office in St. John, Indiana.

8. LCSC is a "Local Educational Agency" (LEA) as defined by the IDEA. 20 U.S.C. § 1401(19).

9. LCSC receives federal funding under the IDEA and is therefore required to comply with the Individuals with Disabilities Education Act (IDEA), 511 I.A.C. Art. 7 (Article 7), and all applicable federal and state regulations.

10. The DOE is a "State Educational Agency" as defined by the IDEA. 20 U.S.C. § 1401(32). It is the "board of education or other agency or officer primarily responsible for the State supervision of public elementary schools and secondary schools…." *Id*.

11. Dr. Katie Jenner is the Indiana Secretary of Education. She is responsible for appointing IHOs to preside over IDEA/Art. 7 Due Process hearings. 511 I.A.C. § 7-34-3(d). IHOs appointed must meet the qualifications stated in the IDEA and Article 7. 20 U.S.C. § 1415(f)(3)(A); 511 I.A.C. § 7-45-8.

12. The DOE and Jenner together are referred to as "State Defendants."

## II. VENUE

13. Venue in this Court is proper pursuant to 28 U.S.C. § 1391(b) because LCSC and State Defendants maintain their principal offices within this judicial district.

## III. JURISDICTION

14. Plaintiffs bring this civil action for review as parties "aggrieved" by the August 28, 2023, Order of DOE-appointed-IHO Maidena Fulford, Esq., which granted LCSC's motion to dismiss their IDEA due process action for lack of standing. 20 U.S.C. § 1415(I)(2).

15. Plaintiffs have exhausted all available administrative remedies and this action for administrative review is timely filed under Indiana law.

16. This Court has original subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331 because it arises under 20 U.S.C. § 1415(i)(3).

17. To the extent Plaintiffs have pendent claims arising under state law, this Court has supplemental jurisdiction over Plaintiffs' state law claims pursuant to 28 U.S.C. § 1367.

## IV. BACKGROUND

18. On October 14, 2022, Plaintiffs filed an educational due process complaint (DPC) under the IDEA and Article 7 with the Indiana Department of Education for violations occurring between October 14th, 2020, and October 14th, 2022. *See* DPC, attached as Exhibit A.

19. The DPC asserted claims under the IDEA and Article 7. DPC ¶ 128.

20. The DPC stated: "The overriding issue in this case is a violation of FAPE over a two-year period in accordance with the requirements of Article 7 and the Individuals with Disabilities Education Act." DPC ¶ 129.

21. The DPC sought, *inter alia*, the following findings and relief, which related to both A.R.S.'s and Parents' rights, *as of the date of the filing of the DPC*:

   a. A finding that, during the period of October 14, 2020, through October 14, 2022, LCSC denied Parents a free appropriate public education (FAPE) due to serious procedural violations of the IDEA, by significantly impeding their opportunity to participate in the decision-making process regarding the provision of FAPE to A.R.S.

   b. A finding that, during the period of October 14, 2020, through October 14, 2022, LCSC denied Parents and A.R.S. a FAPE by failing:

   - to evaluate and identify A.R.S. as a child with a disability;
   - to include all necessary components in A.R.S.'s individualized educational program (IEP);
   - to perform an appropriate functional behavior assessment,
   - to offer A.R.S. a full continuum of placement offerings;
   - to provide appropriate "related services" under the IDEA; and
   - to provide extended school year services.

   c. An order that Plaintiffs are not required to pay for damage to school-issued equipment.

      d. An order for LCSC to provide Plaintiffs reasonable compensatory education for its past IDEA violations.

22. Much of the relief Plaintiffs sought was retrospective; that is, they sought rulings that LCSC had violated A.R.S.'s and their own rights under the IDEA in the two years before they filed the DPC.

23. On October 17, 2022, State Defendants appointed Maidena Fulford, Esq. as the IHO to preside over the DPC. The October 17, 2022, appointment letter notes, in pertinent part:

> Dear Ms. Fulford:
>
> This letter is to confirm your appointment by the Secretary of Education as the Independent Hearing Officer in the above referenced hearing, received in this office on October 17, 2022. A copy of the request is attached. It is your responsibility to frame the issue or issues to be decided at the hearing.

*See* Appointment Letter, Oct. 17, 2022, attached as Exhibit B.

24. IHO Fulford originally set hearing dates for December 20-23, 2022.

25. In late October 2022, A.R.S. was released from an in-patient psychiatric facility where, for several months, she was receiving treatment for educational, emotional, and behavioral issues.

26. A.R.S. returned to LCSC's school in November 2022 but soon reengaged in a pattern of self-injury, harm to her family, and abuse of her siblings. She was a danger to herself and others.

27. Unable to obtain a therapeutic day placement for A.R.S., Parents sought *voluntary* intervention during the pendency of their Due Process action from the Indiana Department of Child Services (DCS) for assistance with a therapeutic placement for their mentally ill child.

28. On November 13, 2022, IHO Fulford issued an order rescheduling hearing dates for January 17-19, 2023.

5

29. Also on November 23, 2022, more than a month *after* the DPC was filed, DCS filed a petition in Lake County Superior Court, Juvenile Division, alleging A.R.S. to be a Child in Need of Services (CHINS). Meanwhile, A.R.S. remained at home with Parents and her family.

30. On December 2, 2022, IHO Fulford re-scheduled the hearing for January 30 through February 2, 2023.

31. On December 14, 2022, A.R.S. was moved to a temporary therapeutic foster placement.

32. On January 17, 2023, after briefing by both parties, IHO Fulford issued a statement of Issues for the Due Process Hearing. *See* Issues for the Due Process Hearing, attached as Exhibit C. The statement of issues listed 12 primary issues and 39 sub-issues, all of which alleged violations of the IDEA and Article 7 predating the DPC. *Id*.

33. On January 31, 2023, IHO Fulford re-scheduled the hearing for March 20-24, 2023.

34. On February 10, 2023, Juvenile Division Magistrate Robert G. Vann issued an Order on Factfinding and Dispositional Decree on DCS's CHINS petition (February Order), stating in pertinent part:

> The rights and obligations pertaining to the wardship as defined by I.C. 31-9-2-134.5 are hereby modified to conform to the terms of this dispositional decree, and the services ordered herein, and further modified to require DCS to have court approval regarding physical custody, any change in placement, visitation with parents, relatives, or other individuals, or medical care and treatment of the child.

*See* February Order, attached as Exhibit D.

35. The February Order did not address Parents' educational decisionmaking rights under the IDEA and Article 7 nor was an educational surrogate appointed to make educational decisions for the child.

36. Nor did the February Order permanently terminate any of Parents' parental rights. In a section entitled "Permanency Plan," the February Order stated: "Of the permanency planning options available, the court finds it is most appropriate and consistent with the best interests of the child to: reunify the child [A.R.S.] to the custodial care of [A.S.] and [S.L.S.]."

37. An additional clarification was noted that Lake Station Community Schools would be the temporary legal settlement of the child. The parents remained at the same address within the bounds of LCSC where they have resided at all relevant times.

38. After a series of orders rescheduling the Due Process hearing, on July 7, 2023, IHO Fulford issued an order rescheduling the Due Process hearing for the following dates: July 17, 18, 19, 31 and August 1, 2023.

39. On June 28, 2023, Defendant LCSC filed a Motion to Intervene in A.R.S.'s matter in Lake County Superior Court for the ostensible purpose of getting A.R.S.'s DCS records.

40. On July 11, 2023, the Superior Court denied LCSC's motion to intervene.

41. On July 11, 2023, LCSC filed a *Motion to Stay Pursuant to Deference to the Authority of the Lake County Juvenile Court Concerning A.S. See* Motion to Stay, attached as Exhibit E. In its Motion to Stay, LCSC asserted that the Juvenile Division action before Magistrate Vann resulted in the Lake County Superior Court having "exclusive" control over A.R.S. with respect to her "health, education and welfare and placement." *Id*. at 3. Based on this assertion, the LCSC threatened to file a Writ of Prohibition preventing the IDOE and IHO from making determinations about A.R.S.'s education. *Id*. at 4.

42. "[T]he Juvenile Court Judge explained that he is available via telephone to be called tomorrow during the 3:00 PM prehearing conference in this matter to discuss the Court's authority over A.S."

43. To the best of Petitioner's knowledge and awareness, outside of a hearing in which the Respondent unsuccessfully attempted to intervene in the DCS, there is no transcript of communication from Conrad to Magistrate Vann. Plaintiffs have no idea of, *inter alia*, what Conrad and Magistrate Vann discussed, why Vann allowed Conrad to speak with him regarding another matter outside of the presence of the parent's educational counsel, whether they discussed the merits of Plaintiff's matter, whether Conrad presented an argument to Vann about Parents' standing in the Due Process action, or whether Vann then shared his opinion with Conrad about Parents' standing.

44. As noted above, Magistrate Vann had earlier denied LCSC's motion to intervene in A.R.S.'s juvenile matter, which was the sole issue before him within that hearing. As of July 2023, Conrad had no legal standing to contact Magistrate Vann regarding that juvenile matter, discuss the child's confidential information or the educational due process complaint, let alone as counsel for a litigant adverse to A.R.S. and her parents in the absence of the parents' counsel.

45. On July 12, 2023, without any petition from Plaintiffs or LCSC, IHO Fulford scheduled an emergency pre-hearing conference for July 12, 2023. IHO Fulford's July 12, 2023, order noted, in pertinent part:

> Respondent [LCSC] filed a Motion for Stay on July 11, 2023. In the Motion, the Respondent stated that the judge in the DCS case would be available to talk at 3:00 pm. The IHO is notifying the parties that she would like to speak with the judge during the pre-hearing conference and to please facilitate getting that set up logistically.

46. During the ensuing July 12, 2023, pre-hearing, Magistrate Vann spoke as a fact and law witness. Without briefing or any input from Parents or their counsel, he offered the following factual and legal opinions, as recorded by IHO Fulford in her subsequent order:

> a. The finding of CHINS on February 10, 2023, and transferred to the student and parents' rights, including their past claims filed prior to the involvement of DCS,

8

to DCS. Pursuant to 31-34-1-1, "Inability, refusal, or neglect of parent, guardian, or custodian to supply child with necessary food, clothing, shelter, medical care, education, or supervision Sec. 1. A child is a child in need of services if before the child becomes eighteen (18) years of age."

b. The child is a ward of the State of Indiana. The parents may provide input.

c. Parents do not have standing right now as long as DCS is involved even on previous claims that were previously filed. No standing now.

d. In Indiana law, CHINS, results in the transferred custody both physical and legal to DCS.

e. These proceedings change the nature of what a parent is.

f. Magistrate Vann has the power to determine the student's education and his orders supersede others.

g. The student is receiving an array of services including behavioral services.

h. DCS oversees the support for the student.

i. DCS could be involved in the due process hearing as a party as long as it has custody of the student, but it must intervene.

*See* July 12, 2023, Order, attached as Exhibit F.

47. Magistrate Vann thus opined (without briefing or input from parents) that (his interpretation of) Indiana law governing parental rights trumped any definitions of "parent" under the federal IDEA and that he had exclusive jurisdiction over Parents' and A.R.S.'s rights under the IDEA and Article 7, even for the parent's claims and a statutory period prior to the involvement of DCS.

48. Magistrate Vann opined on the precise legal questions at issue before the IHO, whether Parents had legal standing to maintain an IDEA action and on the child's educational programming and rights.

49. On July 17, 2023, LCSC filed a Motion to Dismiss the Due Process action in its entirety, alleging that Plaintiffs lacked standing, and that the IHO lacked subject matter jurisdiction.

50. On August 28, 2023, IHO Fulford issued an order granting LCSC's motion to dismiss. *See* Aug. 28, 2023, IHO Dismissal Order, attached as Exhibit G.

51. She based her decision on the Magistrate Vann's order finding that A.R.S. was a Child in Need of Services Pursuant to I.C. 34-31-1-1.

52. IHO Fulford cited Magistrate Vann's language that "the supervision and all custodial rights of the parents are temporarily transferred from the parents to DCS. DCS is the real party in interest regarding any litigation involving the student." IHO Dismissal Order at 2.

53. Ultimately, she held:

> The student is currently residing [sic] the foster parent. Pursuant to 511 IAC-7-32-70(a)(3), "Parent" means a foster parent. The foster parent has not sought to intervene in this DOE due process hearing since the court's order dated February 10, 2023. DCS has not filed any motion to intervene in this matter.
>
> No one who currently has legal authority over the student has filed their appearance or motion to intervene in this matter. The IHO finds the adoptive parents [*i.e.*, Plaintiffs] lack standing. *Id*.

54. Thus, nearly 11 months after filing the DPC, the IHO, appointed by State Defendants, has, through clearly erroneous legal reasoning and in disregard of the IDEA's procedural safeguards guaranteeing Plaintiffs a fair hearing, concluded without any sworn testimony or any hearing that Parents and A.R.S. are now unable to pursue their rights under the IDEA and Article 7 in a Due Process hearing.

## COUNT I.

### Review of IHO Decision under the IDEA and Article 7
### 20 U.S.C. § 1415(i)(2); 511 I.A.C. § 7

Plaintiffs reallege each of the allegations of this Complaint.

55. Adoptive parents are "parents" under the IDEA. 34 C.F.R. § 300.30(a)(1).

10

56. Parents are an essential part of any group making the placement decision. 34 C.F.R § 300.116(a)(1); 34 CFR 300.501 (c); and 71 Fed. Reg. 46,585 (2006).

57. Consistent with 34 C.F.R § 300.501 (c), each public agency must ensure that the parents of each child with a disability are members of any group that makes decisions on the educational placement of their child. 34 C.F.R § 300.327.

58. The IDEA defines "parent" broadly. *Adult Q.T. v. Pottsgrove Sch. Dist.*, 70 F. 4th 663 (3d Cir. 2023). As the *Q.T.* court noted: "The text of the statute does indicate an unambiguous congressional intent to qualify multiple persons as parents for purposes of the IDEA." *Id*. at 667.

59. A.R.S. was made a voluntary ward of the court for purposes of voluntary "placement" on February 10, 2023. Parents' rights were voluntarily and temporarily restricted with respect to A.R.S.'s physical "placement" to ensure her and others' safety. But their rights were not terminated: they are still A.R.S.'s legal parents.

60. There is no court order terminating Parents' right to be involved in A.R.S.'s life. In fact, the February Order stated that Parents must participate in family therapy. It made no finding that Parents' educational decisionmaking rights were revoked or terminated.

61. Parents have the most knowledge of and greatest stake in securing A.R.S.'s past, present and future educational needs. Indeed, even after A.R.S. was temporarily placed, they continued to attend IEP conferences. Defendant continued to accept their signatures and make changes to A.R.S.'s program based on their signature. And Defendant made an offer of judgment in the special education hearing case, which the parents accepted and filed with the hearing officer. Given the IDEA's broad interpretation of "parent," they retain the right to prosecute IDEA claims on behalf of A.R.S.

62. As the IHO noted, no one else – neither DCS nor A.R.S.'s temporary foster parent – stepped in to assert A.R.S.'s educational decision–making rights in the due process action. The IHO thus held that A.R.S. had, in effect, no IDEA "parents," despite her actual parents being right there.

63. Defendant's past violations of the IDEA were not erased because of A.R.S.'s change in residency and temporary custody.

64. Regardless of whether Plaintiffs had the right to assert A.R.S.'s rights, they certainly had the right to assert their own parental rights for past IDEA violations. The IDEA grants parents independent, enforceable rights, which are not limited to procedural and reimbursement-related matters but encompass the entitlement to a free appropriate public education for their child. *Winkelman v. Parma City School Dist.*, 550 U.S. 516 (2007). ("We … find no reason to read into the plain language of the [IDEA] an implicit rejection of the notion that Congress would accord parents independent, enforceable rights concerning the education of their children. We instead interpret the statute's references to parents' rights to mean what they say: that IDEA includes provisions conveying rights to parents as well as to children.").

65. The DPC not only alleges violations of A.R.S.'s IDEA and Article 7 rights, but also Parents' distinct IDEA rights – all stemming from the LCSC's pre-DPC actions. The IHO wholly failed to address Parents' distinct rights in her summary dismissal of the DPC.

66. Plaintiffs are therefore "aggrieved" under the IDEA, entitled to bring an action for review in federal district court. 20 U.S.C. § 1415(i)(2). They seek reversal of the IHO's erroneous decision.

67. The IHO erred as matter of law by finding that Magistrate Vann's orders terminated Parents' right to maintain an IDEA action on behalf of A.R.S. and on their own behalf.

68. The Court must vacate the IHO's order and remand to a different IHO to resume the due process hearing.

## COUNT II.

### Denial of Due Process under the IDEA, Article 7
### Federal Rule of Civil Procedure 65
### Temporary Restraining Order, Preliminary and Permanent Injunction

69. Plaintiffs reallege each of the allegations of this Complaint.

70. "To prevail on a motion for a preliminary injunction, [movant] must show that (1) its case has a likelihood of success on the merits; (2) no adequate remedy at law exists; and (3) it will suffer irreparable harm if the injunction is not granted." *Foodcomm Int'l v. Barry*, 328 F.3d 300, 303 (7th Cir. 2003).

71. The IDEA and Article 7 require that Due Process hearings be conducted "in accordance with appropriate standard legal practice." 20 U.S.C. § 1415(f)(3)(A).

72. State Defendants appointed IHO Fulford to preside over Plaintiffs' Due Process action.

73. Neither the IDEA nor Article 7 permit an IHO to, in effect, certify or outsource questions of law or fact to outside courts.

74. IHO Fulford's *sua sponte* invitation for Magistrate Vann to provide unsworn substantive (*i.e.*, factual and legal) testimony at the July 12, 2023, pre-hearing conference violated Plaintiffs' rights to a fair and impartial Due Process hearing. IHO Fulford called Magistrate Vann for the express purpose of providing expert judicial testimony. She then invited

him to opine on the precise mixed question of law and fact – Parents' standing to maintain an IDEA action – before the IHO. Finally, she adopted his opinion in a manner that was directly adverse to Plaintiffs' legal interests.

75. Moreover, Magistrate Vann's unsworn testimony followed communication with Ms. Conrad, counsel for the litigant who directly benefitted from it, outside the presence of counsel for the Plaintiffs.

76. It was prejudicial to Plaintiffs for IHO Fulford to let Magistrate Vann testify because it put his judicial imprimatur not only on an interpretation of Indiana and Federal law adverse to Plaintiffs, but on the application of Indiana and Federal law to the facts of the case on which he was testifying – facts he learned while presiding over an entirely separate matter. There was no opportunity for Plaintiffs to cross-examine Vann. Moreover, even if there were such an opportunity, Parents would be in the impossible position of directly challenging the testimony of a judge who had the power to determine their parental rights.

77. IHO Fulford's reliance on Magistrate Vann's legally erroneous, unsworn assertion that he "has the power to determine the student's education and his orders supersede others" shows that Fulford lacked independence and believed, incorrectly, her authority was secondary to or subject to Vann's. *See, e.g., Merritt v. Reserve Ins. Co.*, 34 Cal. App. 3d 858, 883, 110 Cal. Rptr. 511, 528, 1973 Cal. App. LEXIS 855, *51 (Cal. App. 2d Dist. Oct. 29, 1973) ("We think it prejudicial to one party for a judge to testify as an expert witness on behalf of the other party with respect to matters that took place before him in his judicial capacity. In such instance the judge appears to be throwing the weight of his position and authority behind one of two opposing litigants.").

78. Here, IHO Fulford invited Magistrate Vann to "throw his weight" behind LCSC's case. And he did exactly that: opining unequivocally that Fulford should not hear the case.

79. IHO Fulford's decision to invite Magistrate Vann to testify and her reliance on his unsworn factual and legal testimony showed that she was not independent, not possessed of the "knowledge of, and the ability to understand, the provisions of [the IDEA], Federal and State regulations pertaining to [the IDEA], and legal interpretations of [the IDEA] by Federal and State courts," and not possessed of the "knowledge to conduct hearings in accordance with appropriate, standard legal practice." 20 U.S.C. § 1415(f)(3)(A).

80. Plaintiffs are likely to succeed on the merits because Federal and Indiana law separately afforded Parents standing to seek a fair, timely and impartial Due Process hearing, from a truly independent IHO, on behalf of both A.R.S. and themselves, and to receive a decision on substantive grounds.

81. The State Defendants' appointment of IHO Fulford therefore denied Plaintiffs the right to Due Process as guaranteed by the IDEA and Article 7.

82. State Defendants, by appointing an IHO who ignored the most basic precepts for conducting an IDEA Due Process hearing (or any judicial hearing) and thereby improperly dismissed Plaintiffs' case, failed to guarantee that Plaintiffs would get a fair, timely and impartial decision on the merits of their IDEA and Article 7 claims from an independent hearing officer.

83. The result of State Defendants' failure to appoint an appropriate IHO is that Plaintiffs must now seek judicial intervention just to secure a hearing on the merits of their IDEA claims. Plaintiffs have no adequate remedy at law.

84. The IDEA gives Parents and their children numerous procedural rights, including the right to a decision on "substantive grounds based on a determination of whether the child

received a [FAPE]," 20 U.S.C. § 1415(f)(3)(E), within a short, defined period. 34 C.F.R. §300.515(a) (providing that a final decision must be reached within 45 days after the expiration of the 30-day Resolution Period); *Melodee H. v. Dep't of Educ.*, 2006 U.S. Dist. LEXIS 74465, *8, 2006 WL 2927576 (D. Haw. Oct. 11, 2006) ("The plain language of the [IDEA] regulations makes clear that their purpose is to ensure an expeditious resolution of the issues raised in the petitioner's request for hearing.").

85. "[A] significant delay in providing a due process hearing — one measured in months beyond expiration of the 45 Day Rule — constitutes a substantive as opposed to procedural harm, and therefore, constitutes denial of a FAPE." *C.P. v. N.J. Dep't of Educ.*, 2020 U.S. Dist. LEXIS 90150, *26 (D.N.J. May 22, 2020). Here, State Defendants' actions have led to this matter being delayed far beyond the IDEA's timelines. Forcing Plaintiffs to seek vindication of their rights through this federal appeal, absent injunctive relief, promises to delay a decision on the DPC by months, if not years.

86. By contrast, State Defendants and LCSC will suffer no prejudice if the Court grants the requested TRO/Injunctive relief.

87. And the public interest weighs strongly in favor of requiring State Defendants to comply with the IDEA's Due Process hearing requirements. *S.M. v. Chichester Sch. Dist.*, 2022 U.S. Dist. LEXIS 52872, *13 (E.D. Pa. March 24, 2022) ("[W]hen a student is deprived of their legal right to an education under federal law, the public interest favors injunctive relief to enforce their rights." ).

## RELIEF SOUGHT

**WHEREFORE,** Plaintiffs respectfully request that this Court:

1. Find that it has jurisdiction over this action.

2. Find that Plaintiffs are "aggrieved" under the IDEA.

3. Find that Plaintiffs are likely to succeed on the merits of their claim that Parents have standing to assert A.R.S.'s rights and their own rights under the IDEA before the Indiana IHO.

4. Find that Plaintiffs have no adequate remedy at law besides the requested injunction.

5. Find that Parents have standing to assert A.R.S.'s rights and their own rights under the IDEA before the Indiana IHO.

6. Find that the IHO erred as a matter of law by dismissing Plaintiffs' due process action for Parents' lack of standing.

7. Find that any Plaintiffs will suffer irreparable harm from any further delay in completing their Due Process hearing.

8. Find that LCSC and State Defendants will suffer no harm if the Court grants the relief sought.

9. Find that the public interest weighs in favor of granting Plaintiffs immediate injunctive relief.

10. Vacate the IHO's dismissal order.

11. Issue a temporary restraining order to remand this action and enjoin State Defendants to appoint a different IHO immediately to preside over Plaintiffs' due process action.

12. Award attorneys' fees, as authorized under the IDEA.

13. Grant any other relief the Court deems appropriate.

Dated: September 20, 2023,	Respectfully Submitted,

**CONNELL MICHAEL KERR, LLP**

<u>/s/Catherine M. Michael</u>
Catherine Michael, #22474-49
550 Congressional Blvd, Suite 115
Carmel, IN 46032
Telephone: (317) 343-4482
Fax: (317) 348-2916
catherine@cmklawfirm.com

<u>s/Dorene Philpot</u>
Dorene Philpot, #22055-49
PHILPOT LAW OFFICE, PLLC
275 Bristol Lane
Livingston, Texas 77351
(281) 989-2010
Fape4kids@gmail.com

*Attorneys for Plaintiffs*