UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
HAMMOND DIVISION at LAFAYETTE

| | | |
|---|---|---|
| A.S. and S.S., Individually and as Parents and Next Friends of A.R.S., a Minor, | ) ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) | NO. 4:23CV79-PPS |
| LAKE CENTRAL SCHOOL CORPORATION, ST. JOHN, INDIANA, THE INDIANA DEPARTMENT OF EDUCATION, Division of Special Education, DR. KATIE JENNER, Indiana Secretary of Education, | ) ) ) ) ) ) ) ) | |
| Defendants. | ) | |

## OPINION AND ORDER

This case involves a family with significant challenges, and the issue before me warrants a lengthy recap of the circumstances that brings the matter here. Plaintiffs A.S. and S.S. are the adoptive parents of A.R.S, who was 13 years old at the time of the complaint. A.R.S. suffers from a host of psychological conditions: Post-Traumatic Stress Disorder, Disruptive Mood Dysregulation Disorder, Reactive Attachment Disorder, Depersonalization Derealization Disorder, Generalized Anxiety Disorder, and Attention Deficit Hyperactivity Disorder. For several months until late October 2022, A.R.S. was an in-patient at a psychiatric facility. After her release, A.R.S. returned to the family home. She also returned to school in the Lake Central district in November 2022 but soon resumed a previous pattern of self-injury, harm to her family, and abuse of her siblings. A.S. and S.S. pursued several different strategies for responding to

A.R.S. and her issues, and this case reflects their dissatisfaction with the unintended consequences.

Under the Individuals with Disabilities Education Act or "IDEA," A.R.S. is eligible for special education and related services from defendant Lake Central School Corporation. In October 2022, A.S. and S.S. filed a complaint with the Indiana Department of Education alleging that Lake Central had denied A.R.S. a free appropriate public education (frequently referred to as a "FAPE") during the previous two-year period. An Independent Hearing Officer was appointed and a hearing was set in December 2022 but later continued several times, finally to July 2023. l refer to these as the IDEA proceedings.

While the parties awaited the administrative hearing, a separate track in A.R.S.'s care started to develop — this involving the Juvenile Division of the Lake County Superior Court. On November 23, 2022, the Indiana Department of Child Services filed a petition in that court seeking a finding that A.R.S. was a Child in Need of Services (CHINS). This appears to have been a result of A.S. and S.S. seeking assistance from DCS in getting a "therapeutic placement" for A.R.S. [DE 1 at ¶27.] In response to DCS's petition, A.R.S. was moved to a therapeutic foster placement on December 14, 2022. Then, on February 10, 2023, Magistrate Judge Robert G. Vann issued an order that adopted a "stipulation for CHINS Adjudication" and awarded to DCS "wardship of the child, with responsibility for supervision, care and placement." [DE 1-4 at 1-2.] The order further required DCS "to have court approval regarding physical custody, any

2

change in placement, visitation with parents, relatives, or other individuals, or medical care and treatment of the child." [DE 1-4 at .] I'll refer to these events as the DCS track.

Lake Central Schools perceived a conflict between the proceedings concerning A.R.S. on the two tracks. Lake Central attempted to intervene in the juvenile proceedings on the DCS track, but its motion was denied. On July 11 Judge Vann issued an order declaring A.R.S. to be a "ward of the state" and that "all custodial rights of the parents are temporarily transferred from the parents to DCS." [DE1-7.][1] Lake Central responded by filing a motion to stay the IDEA proceedings in deference to the authority of the Lake County Juvenile Court over matters involving A.R.S. [DE 1-5.] The following day, the IHO issued an order advising the parties that she intended to speak to Magistrate Judge Vann during a pre-hearing conference. [DE 1-6.] Thereafter, Lake Central moved to dismiss the case before the IHO without prejudice on the grounds that A.S. and S.S. lacked standing. The IHO agreed, issuing her order dismissing the case on August 28, 2023, finding that A.R.S. was a ward of the State and her parents no longer had standing to proceed with their complaint on the IDEA track. [DE 1-7.] A.S. and S.S. allege in this case that the IHO's conclusions merely parroted those expressed to her by Judge Vann.

Before me, A.S. and S.S. have filed a complaint seeking review of the IHO's decision and alleging a denial of due process under the IDEA. Now pending is their

---

[1] Judge Vann's July 11, 2023 order does not appear to be in the record, but it was quoted by the IHO in her order dismissing the case.[DE 1-7 at 2.]

3

Motion for Injunctive Relief, by which A.S. and S.S. seek an order vacating the IHO's dismissal, reinstating their IDEA proceeding, and requiring the replacement of the IHO whose ruling they disagree with. [DE 24.] Their motion does not appropriately explain its procedural basis and makes no reference to Fed.R.Civ.P. 65, but it cites the familiar standards applicable to a request for a preliminary injunction and will be construed as one.

The motion does not, however, appropriately seek a preliminary injunction. First, nothing in the language of the motion or of the proposed order suggests that the relief sought is in fact preliminary. To the contrary, A.S. and S.S. seek an order that would award them all the relief sought in their complaint, and not subject to any further or final determination in the case. This is done without any reference to Rule 65(a)(2)'s provision for consolidating a preliminary injunction hearing with trial on the merits. Second, the proposed order does not "enjoin" in the usual sense. The principal aim of the motion is not imminently (but temporarily) to compel or restrain anyone from acting in a particular way, but instead for A.S. and S.S. to prevail, using a procedurally extraordinary means, on their appeal of the dismissal of their IDEA proceedings before the Indiana Department of Education. In these critical respects, then, the Motion for Injunctive Relief appears to be an entirely impermissible use of Rule 65 that does not actually seek to enjoin anything in the customary manner of a preliminary injunction.

Both Lake Central and the Department of Education have expressed the same criticism of A.S. and S.S.'s motion. "From the outset, the School notes that Plaintiffs have selected a highly unusual procedural mechanism to accomplish judicial review of the administrative proceedings." [DE 33 at 3.] The State defendants observe that plaintiffs seek a "preemptive decision on their claims" but "without presentation of the agency record for this Court to review." [DE 32 at 1.] Judicial review of IDEA decisions is ordinarily obtained by a different procedural route. "Cross-motions for summary judgment are the standard method for presenting a case to a district court for decision on the record compiled by the administrative tribunal that the court is reviewing." *Dale M. ex rel. Alice M. v. Bd. of Educ. of Bradley-Bourbonnais High Sch. Dist. No. 307*, 237 F.3d 813, 816 (7th Cir. 2001). For all these reasons, the motion before me is a square peg attempting to fit into a round hole and thereby win final, rather than preliminary, relief for plaintiffs A.S. and S.S. On this basis alone, denial of the motion would be justified. But in addition, I have considered the standard requirements for a preliminary injunction, and find that they are not met here.

In order to obtain a preliminary injunction, a plaintiff must establish "some likelihood of succeeding on the merits, and (2) that it has 'no adequate remedy at law' and will suffer 'irreparable harm' if preliminary relief is denied." *Cassell v. Snyders*, 990 F.3d 539, 544-45 (7th Cir. 2021) (quoting *Abbott Laboratories v. Mead Johnson & Co.*, 971 F.2d 6, 11 (7th Cir. 1992)). If these prerequisites are met, the court then "must weigh the harm the plaintiff will suffer without an injunction against the harm the defendant will

5

suffer with one," and "whether the preliminary injunction is in the public interest." *Courthouse News Service v. Brown*, 908 F.3d 1063, 1068 (7th Cir. 2018). Because plaintiffs do not establish either the irreparable harm or likelihood of success requirements, the motion for injunctive relief will be denied.

"A finding of irreparable harm to the moving party, if the injunction is denied, is 'a threshold requirement for granting a preliminary injunction.'" *DM Trans, LLC v. Scott*, 38 F.4th 608, 617 (7th Cir. 2022)(quoting *Life Spine, Inc. v. Aegis Spine, Inc.*, 8 F.4th 531, 545 (7th Cir. 2021)). A.S. and S.S. argue that further delay in their IDEA proceedings constitutes irreparable harm that they will suffer if they are not granted an injunction to reinstate their case before a new IHO. [DE 25 at 11.] This rings hollow for several reasons. By their own description, in their IDEA complaint "[m]uch of the relief Plaintiffs sought was retrospective; that is, they sought rulings that [Lake Central] had violated A.R.S.'s and their own rights under the IDEA in the two years before they filed" that administrative complaint. [DE 1 at ¶22.] Those issues do not appear to support a finding that failure to receive an injunction for the resumption of those proceedings now would cause irreparable harm.

By plaintiffs' count, it has already been more than 500 days since they filed their due process complaint with the Department of Education. [*Id*.] And their own projected timetable suggests that a final decision could take months even after the IDEA proceedings are reinitiated. [*Id*.] Obviously everyone wants what they believe to be justice sooner rather than later, but the circumstances outlined by plaintiffs themselves

show that, realistically, time is just not of the essence here. Nor have plaintiffs treated the matter that way, only now being in a hurry. Several of the continuances of the IHO's hearing were at *plaintiffs'* request. [DE 33-2 at 8, 12.] The IHO's conclusion that A.S. and S.S. had no standing was issued on July 12, 2023. A.S. and S.S. filed their complaint on September 20, 2023. They did not a seeking a temporary restraining order. The motion I construe as seeking a preliminary injunction was not filed until December 16, 2023. [DE 24.] Plaintiffs' own lack of urgency in seeking the injunction belies their delay theory of irreparable harm.

A.S. and S.S. also urge a finding of irreparable harm based on delay in receiving the relief they seek in the IDEA proceedings, described as "compensatory education funds for tutoring, physical therapy, occupational therapy, speech therapy, and counseling" for A.R.S. [DE 25 at 12.] Without such funds, plaintiffs suggest they "may be unable to obtain these services, causing A.R.S. to fall further behind academically, socially, and emotionally." [*Id*.] Plaintiffs have not offered evidence to support a determination that any of the listed services are needed now by A.R.S., or how urgently.

Defendant Lake Central suggests to the contrary: "A.R.S. is already receiving services, is in a stable, long-term foster care placement," and "is doing well behaviorally and academically." [DE 33 at 17.] In support, Lake Central provides the declaration of Debra A. Clayton, a School Service Provider and member of the team responsible for overseeing the implementation of A.R.S.'s Individualized Education Plan. [DE 33-1 at ¶6.] Clayton attests as of February 1, 2024, that "A.R.S.'s behavior this academic year

7

has been exceptional," that she "has been enrolled in and has successfully participated in multiple 'out classes' with the rest of the general educational students," and that she "is performing well academically." [*Id*. at ¶¶10, 15, 27.] Plaintiffs have not met the threshold requirement of demonstrating a risk of irreparable harm.

Neither do A.S. and S.S. meet another threshold element for the issuance of a preliminary injunction. "[I]f a party fails to show a likelihood of success on the merits, the court need not address the remaining preliminary injunction elements." *The Bail Project, Inc. v. Comm'r, Ind. Dep't of Ins.*, 76 F.4th 569, 575 (7th Cir. 2023). The complaint challenges the IHO's conclusion that A.S. and S.S. lacked standing in the IDEA proceedings, and also the IHO's inclusion of Judge Vann of the Juvenile Court in her IDEA process. If the IHO correctly determined the standing issue regardless of Judge Vann's input, any procedural impropriety in considering Judge Vann's views would not entitle A.S. and S.S. to relief from the IHO's decision. Plaintiffs do not demonstrate that they are likely to succeed in their challenge on the matter of standing.

Obviously a child's adoptive parents ordinarily occupy a position giving them standing as parents under the IDEA. *See* 34 C.F.R. §300.30(a)(1). But the same regulation creates an exception to the presumption when "the biological or adoptive parent does not have legal authority to make educational decisions for the child." §300.30(b)(1). The issue in this case appears to boil down to whether, at the time the IHO made her decision, A.S. and S.S. retained that legal authority, or no longer possessed such authority in view of order of the Juvenile Court making A.R.S. a ward of

8

the Department of Child Services. In their initial brief, A.S. and S.S. largely ignore this obviously pertinent exception set out in §300.30(b)(1). [DE 25 at 13-19.]

Acknowledging its existence in their reply, A.S. and S.S. argue that their authority as A.R.S.'s parents was not impacted by the wardship because multiple parties can qualify as parents where there is no contest or conflict between them in the role. [DE 37 at 6-7.] This is the principal reasoning relied on to support plaintiffs' assertion of a likelihood of success on the merits, and it is repeated six times in their reply brief. But A.S. and S.S. cite no authority supporting this rationale, which falls well short of being self-evident. Plaintiffs' reliance on the Third Circuit decision in *Q.T. on behalf of H.P.-B. v. Pottsgrove School District*, 70 F.4th 663 (3rd Cir. 2023), is unavailing. Rather than endorse plaintiffs' theory, the Third Circuit expressly declined to resolve the question whether "§300.30(b) only applies as 'a tiebreaker when multiple qualified "parents" are competing with each other to act on behalf of the same child.'" *Id.* at 667, n.3.

The central question in this case is the correctness of the IHO's standing decision. To demonstrate a likelihood of success on the merits, A.S. and S.S. needed to offer a persuasive argument that the IHO's conclusion was erroneous, and they have not done so. I do not forecast my ultimate resolution of the question but merely find that, for purposes of seeking a preliminary injunction, plaintiffs have not met the threshold requirement of showing that they are likely to prevail on their claim for relief from the IHO's dismissal of their IDEA proceeding.

## Conclusion

"A preliminary injunction provides an extraordinary form of relief, available only when a party makes a clear showing that the case demands it." *The Bail Project*, 76 F.4th at 574-75.  The failure to establish any of the "threshold requirements" means that a preliminary injunction is unavailable.  *Finch v. Treto*, 82 F.4th 572, 578 (7th Cir. 2023).  A.S. and S.S. have failed to meet their burden of demonstrating that a preliminary injunction is warranted.  The relief sought is neither preliminary nor essentially injunctive in nature.  Plaintiffs do not establish any likelihood of irreparable harm if the motion is not granted, nor a likelihood that they will succeed on the merits.  The request for a preliminary injunction must be denied.

**ACCORDINGLY:**

Plaintiffs' Motion for Injunctive Relief [DE 24] is DENIED.

SO ORDERED on March 18, 2024.

    /s/ Philip P. Simon
UNITED STATES DISTRICT JUDGE